So Ordered.

Dated: September 22, 2022



Katherine Maloney Perhach
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                                                          Chapter 13
Robert Lee Harris and
Misty Harris,                                                            Case No. 21-23864-kmp
               Debtors.

**DECISION AND ORDER**
**(1) SUSTAINING DEBTORS' OBJECTION TO AMENDED CLAIM NO. 1-2 FILED BY**
**THE CITY OF MILWAUKEE TREASURER'S OFFICE; AND**
**(2) OVERRULING THE CITY OF MILWAUKEE'S OBJECTION TO THE DEBTORS'**
**AMENDED PLAN**

The issue before the Court is whether charges for delinquent municipal services, delinquent storm water services, delinquent water services, "other special" services, and interest and penalties that were included on the Debtors' property tax bill by the City of Milwaukee (the "City") should be classified as a priority claim under 11 U.S.C. § 507(a)(8)(B) as "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." If some or all of these charges are entitled to priority status under § 507(a)(8)(B), then the Debtors' Chapter 13 plan must pay those charges in full under § 1322(a)(2), unless the City agrees to different treatment. For the reasons stated below, the Court finds that the City has not met its burden of proving that the charges for the delinquent municipal services, the delinquent storm water services, the delinquent water services, the "other special" services, and interest and penalties that were included on the Debtors' property tax bill by the City were a "property tax." Therefore, those amounts are not entitled to priority status as stated in the City's amended proof of claim. Accordingly, the Debtors' objection to the City's amended proof of claim is sustained and the City's objection to the Debtors' amended plan is overruled.

# FACTS

The Debtors in this case own and reside at real property located at 3038 N. 30th Street, Milwaukee, Wisconsin (the "Property"). It is undisputed that at the time the Debtors filed this bankruptcy case, they owed the City significantly more than the Property was worth. The Debtors asserted in their schedules that the value of the Property is $26,000. Amended Schedule A/B, Docket No. 77 at 1. The City filed an amended proof of claim in this case agreeing with the Debtors that the value of the Property is $26,000. Amended Claim No. 1-2. The Debtors stated in their bankruptcy schedules that they owed $54,961.88 to the City for "Real Estate Tax Arrearage." Docket No. 24 at 11. The City's amended proof of claim agreed with the Debtors and confirmed that the Debtors owe a total of $54,961.88 to the City. Amended Claim No. 1-2. The Debtors and the City agree that the City has a secured claim in the amount of $26,000 and an unsecured claim in the amount of $28,961.88.[1] This is where the agreement between the parties ends.

The Debtors and the City disagree about the amount of the City's unsecured claim that is entitled to be treated as a priority claim under § 507(a)(8)(B) as "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." In its proof of claim, the City asserted that the amount of $3,897.19 should be classified as a priority claim under § 507(a)(8). Amended Claim No. 1-2. The City offered the following breakdown of that amount in the attachment to its amended proof of claim:

| | | |
|---|---|---|
| 2020 Tax Principal | | $479.45 |
| 2020 Special Charges | | $3,095.95 |
| | Subtotal | $3,575.40 |
| 2020 Interest & Penalties | | $321.79 |
| | Total | $3,897.19 |

The Debtors filed an objection to the City's proof of claim, challenging the City's classification of its claim as a priority claim under § 507(a)(8)(B). Docket No. 109. The Debtors attached their 2020 City of Milwaukee Combined Property Tax Bill to their claim objection. The tax bill attached as Exhibit A to the Debtors' claim objection showed the following:

---

[1] According to the Debtors' bankruptcy schedules, Custom Servicing, LLC holds a first mortgage on the Property in the amount of $86,700. Docket No. 24 at 12. Custom Servicing, LLC did not file a proof of claim in the bankruptcy case. The Debtors' amended plan provides that Custom Servicing, LLC's claim against the Property "shall be treated as a fully unsecured claim due to the City of Milwaukee's claim fully encumbering the Property's value." Docket No. 119.

2

| | | |
|---|---|---|
| 2020 Net Property Tax | | $479.45 |
| Detail of Special Assessments and Other Charges<br>• Delinquent Municipal Services<br>• Delinquent Storm Water Account<br>• Delinquent Water Account | | $379.54<br>$347.55<br>$480.03 |
| Total Other Special | | $1,888.83 |
| | Total | $3,575.40[2] |

The Debtors asserted that only the "net property tax" in the amount of $479.45 was a "property tax" entitled to be treated as a priority claim under § 507(a)(8)(B).[3] The Debtors further asserted that the charges for the delinquent municipal services, the delinquent storm water services, the delinquent water services, and the "other special" services were not a "property tax" and therefore not entitled to be treated as a priority claim under § 507(a)(8)(B).

The Debtors filed an amended Chapter 13 plan that proposed to pay the secured portion of the City's amended claim in the amount of $26,000, the agreed value of the Property. Docket No. 119. As for the unsecured portion of the City's amended claim, the Debtors proposed to pay $479.45, the amount of the 2020 net property tax for the Property, as an unsecured priority claim under § 507(a)(8)(B) as "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." *Id.* They proposed to pay the remaining balance of the City's amended claim in the amount of $28,482.43 as a general unsecured claim.[4] *Id.*

The City objected to the Debtors' proposed amended Chapter 13 plan and also responded to the Debtors' claim objection, asserting that $3,897.19 of its claim was entitled to priority status and must be paid in full through the Debtors' Chapter 13 plan.

The Court held a hearing on the Debtors' objection to the City's amended proof of claim and on the City's objection to the Debtors' amended plan. The Court ordered the parties to "file

---

[2] The difference between the $3,575.40 shown on the tax bill and the City's $3,897.19 asserted priority claim is $321.79 in "2020 Interest & Penalties."

[3] The Debtors' objection actually requests that the Court "set the portion of the [City's] priority claim at $478.45." This appears to be a typographical error since the property tax bill clearly states that the amount of the 2020 net property tax is $479.45 and the Debtors' plan seeks to pay $479.45 of the City's claim as an unsecured priority claim under § 507(a)(8)(B).

[4] Because they owe the City more than the Property is worth, the Debtors proposed no payment to mortgage holder Custom Servicing, LLC. As mentioned in footnote 1 above, the amended plan provided that Custom Servicing's claim will "be treated as a fully unsecured claim due to the City of Milwaukee's claim fully encumbering the Property's value." Docket No. 119.

3

letter briefs addressing whether the delinquent municipal services, delinquent water, delinquent storm water, and other special services are entitled to priority status under 11 U.S.C. § 507(a)(8)(B), including a discussion of *In re Grede Foundries, Inc.*, 651 F.3d 786 (7th Cir. 2011)." Docket No. 127. The Court further ordered the City to "file affidavit(s) in support of its position that the delinquent municipal services, delinquent water, delinquent storm water, and other special services are entitled to priority status under 11 U.S.C. § 507(a)(8)(B)." *Id.* The Court also afforded the Debtors the opportunity to file rebuttal affidavits upon receipt of the City's affidavits if they chose to do so. *Id.*

## BURDEN OF PROOF

A proof of claim is "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "The same evidentiary presumption does not apply to a claim's priority status." *In re Peete*, 642 B.R. 299, 309 (Bankr. E.D. Wis. 2022). A claimant has the burden of proving by a preponderance of the evidence that its claim is entitled to priority status. *In re Alewelt*, 520 B.R. 704, 710 (Bankr. C.D. Ill. 2014). As discussed below, the City has failed to meet its burden of proving by a preponderance of the evidence that the charges for the delinquent municipal services, the delinquent storm water services, the delinquent water services, the "other special" services, and interest and penalties are a "property tax" entitled to priority status under § 507(a)(8)(B).

## ANALYSIS

Section 507(a)(8)(B) grants priority status to "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." The Bankruptcy Code does not define the terms "tax" or "property tax." The United States Supreme Court has directed courts to conduct a "functional examination" to determine whether an obligation owed to a governmental entity is a tax. *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996). For the purpose of priority in bankruptcy, the Supreme Court considers an exaction to be a "tax" when:

- it is "a pecuniary burden laid upon individuals or property for the purpose of supporting the government" (*New Jersey v. Anderson*, 203 U.S. 483, 492 (1906));

- it is "a pecuniary burden[] laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it" (*New York v. Feiring*, 313 U.S. 283, 285 (1941)); and

- it "is an enforced contribution to provide for the support of government" (*Reorganized CF & I Fabricators*, 518 U.S. at 224 (quoting *United States v. La Franca*, 282 U.S. 568, 572 (1931))).

4

The Seventh Circuit has examined the meaning of "tax" in determining whether exceptions to the automatic stay permitted a municipality to collect the debtor's unpaid utility charges.[5] *In re Grede Foundries, Inc.*, 651 F.3d 786 (7th Cir. 2011). In examining whether utility charges payable by the debtor to the local municipal utility were a "tax" under § 362(b)(9) and/or (18), the Seventh Circuit stated that "[a] tax is generally defined as a source of revenue that provides general benefits to the public." *Id.* at 794. "The test for identifying a tax, regardless of 'its nominal designation,' is whether 'it is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits.'" *Id.* at 794-95 (quoting *Diginet, Inc. v. W. Union ATS, Inc.*, 958 F.2d 1388, 1399 (7th Cir. 1992)). The Seventh Circuit also cited to the definition of a "tax" provided by *Black's Law Dictionary* 1594 (9th ed. 2009) (defining a "tax" as a "charge, usu. monetary, imposed by the government on persons, entities, transactions, or property to yield public revenue") and *Webster's Third New International Dictionary* 2345 (1986) (defining a "tax" as a "pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes"). Ultimately, the Seventh Circuit held that because the utility charges did "nothing more than recover [the municipality's] costs of delivering utility services," they were not taxes and the exceptions to the automatic stay did not apply. *Grede Foundries*, 651 F.3d at 795.

The Seventh Circuit has analyzed the difference between a "tax" and a "fee" under other statutes as well. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722 (7th Cir. 2011). A tax "generate[s] revenue." *Id.* at 728. A fee either "compensate[s] for a service that the state provides to the persons or firms on whom or on which the exaction falls" or "compensate[s] the state for costs imposed on it by those persons or firms, other than costs of providing a service to them." *Id.* "If the fee is a reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and is within the municipality's regulatory power." *Id.* (citing *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1399 (7th Cir. 1992)). If the fee "is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation." *Id.* at 728-29 (citing *Diginet*, 958 F.2d at 1399).

The United States District Court for the Eastern District of Wisconsin also looked at the distinction between a "tax" and a "fee" in *Oneida Tribe of Indians of Wisconsin v. Village of Hobart*, 891 F. Supp. 2d 1058 (E.D. Wis. 2012), *aff'd*, 732 F.3d 837 (7th Cir. 2013). In that case, the court defined a "tax" as "a monetary charge imposed by the government on persons, entities, or property to yield public revenue" and a "fee" as "a charge for labor or services." *Id.*

---

[5] Two of the exceptions to the § 362(a) automatic stay at issue in the *Grede Foundries* case refer to a "tax." Section 362(b)(9) provides that the automatic stay does not stop "an audit by a governmental unit to determine tax liability," "the issuance to the debtor by a governmental unit of a notice of tax deficiency," or "the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment." Section 362(b)(18) provides that the automatic stay does not stop "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition."

at 1064 (citing to *Black's Law Dictionary*).  The court further noted that perhaps the clearest discussion of the distinction between a "tax" and a "fee" appears in *San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico*, 967 F.2d 683 (1st Cir. 1992):

> Courts have had to distinguish "taxes" from regulatory "fees" in a variety of statutory contexts.  Yet, in doing so, they have analyzed the legal issues in similar ways.  They have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other.  The classic "tax" is imposed by a legislature upon many, or all, citizens.  It raises money, contributed to a general fund, and spent for the benefit of the entire community.  The classic "regulatory fee" is imposed by an agency upon those subject to its regulation.  It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive.  Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

*Oneida Tribe*, 891 F. Supp. 2d at 1065 (citing to *San Juan Cellular*, 967 F.2d at 685 (citations omitted)).  In determining whether a government exaction is a tax or a fee, a court should focus on three questions:

(1)     What entity imposed the fee?

(2)     What parties are being assessed the fee?

(3)     Is the revenue generated by the fee expended for general public purposes or used for the regulation and benefit of the parties upon whom the assessment is imposed?

*Oneida Tribe*, 891 F. Supp. 2d at 1065 (citation omitted).  "If the exaction is imposed by the legislature upon all, or almost all, of the citizens or property to accomplish a general public purpose, it is more likely to be a tax."  *Id.*  "If, on the other hand, the charge is imposed by a government agency on a specific subset of citizens or conduct subject to regulation by the agency and is set at such amount as to discourage certain conduct or defray the costs of the agency, it is a fee."  *Id.*

The City has not met its burden of proving that the amounts the Debtors owe for the delinquent municipal services, the delinquent storm water services, the delinquent water services, the "other special" services, or interest and penalties are "property taxes" under § 507(a)(8)(B) and properly classified as a priority claim.

6

First, the City has provided the Court with no information whatsoever about the charges for the "other special" services in the amount of $1,888.83. The City's letter brief and the Declaration of Dennis Yaccarino that the City filed in support of its plan objection and its amended claim do not provide the Court with any information about the "other special" services charged to the Debtors. All the Court knows about the charges is the amount of the charges and that they are "special," but the City has not told the Court the nature or purpose of the charges or how the amount for the "other special" services was calculated. Given the lack of information provided by the City, the Court is unable to conduct the required "functional examination" to determine whether the charges for the "other special" services are a tax or a fee. The Court is unable to determine from what has been provided by the City whether the charges for the "other special" services are charged to all of the residents of the City to provide a source of revenue to accomplish a general public purpose (*i.e.*, a tax) or merely a cost imposed by the City on the Debtors for services provided by the City to the Debtors (*i.e.*, a fee). The Court finds that the City has not met its burden of proving that the charges for the "other special" services in the amount of $1,888.83 are a "property tax" entitled to priority under § 507(a)(8)(B). Because the Debtors have not objected to the amount or validity of the portion of the City's amended claim attributed to the "other special" services, the Court will allow those charges in the amount of $1,888.83 as a general unsecured claim.

Next, the City has not met its burden of proving that the charges for the delinquent municipal services in the amount of $379.54, for the delinquent storm water services in the amount of $347.55, or for the delinquent water services in the amount of $480.03 are "property taxes" under § 507(a)(8)(B). The City itself seems to concede in its letter brief that these amounts are intended to recover costs imposed by the City on the Debtors for services provided to the Debtors by the City (*i.e.*, a fee):

> Municipal charges, such as for water or storm sewers, are involuntary, pecuniary burdens placed on all property owners and the property itself *in proportion to usage and needs . . . .* The City must provide these services at the rate it does. The provision of municipal services to residents is costly and *charges are imposed on users of those services to defray the cost to the City*.

Docket No. 132 at 2 (emphasis added). "The test for identifying a tax, regardless of 'its nominal designation,' is whether 'it is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits.'" *Grede Foundries*, 651 F.3d at 794-95 (citation omitted). The City's own argument suggests that the City's charges for the delinquent municipal services, the delinquent storm water services, and the delinquent water services are intended to recover costs from the Debtors in proportion to the Debtors' usage and needs (*i.e.*, a fee) and not to generate revenue that the City can use to offset unrelated costs or provide a general benefit to the public (*i.e.*, a tax).

The City further seems to concede in Mr. Yaccarino's Declaration that the payments received "for water, storm water, sewer charges, and other Milwaukee municipal services . . . are used to *offset costs* . . ." Yaccarino Decl. ¶ 6. This statement suggests that these charges recover a cost imposed on the City's residents (*i.e.*, a fee) instead of generating revenue that the City can use to offset an unrelated cost or confer an unrelated benefit (*i.e.*, a tax).

The Court also does not know much about the charges for the "delinquent municipal services" in the amount of $379.54 (just like the charges for the "other special" services noted above). Neither the City's letter brief nor the City's Declaration tell the Court the nature or purpose of these charges or why the Debtors were charged this amount. This lack of information from the City also prevents the Court from conducting the required "functional examination" of the charges for the "municipal services" to determine whether those charges are a tax or a fee and further leads to the conclusion that the City has failed to meet its burden of proving that this amount is a tax.

The City has not come forward with evidence to show this Court that the charges for the delinquent municipal services, the delinquent storm water services, or the delinquent water services are a "property tax" and not a fee. The Court is unable to determine from the evidence that has been submitted by the City that the revenue generated by these charges is "for general public purposes" (*i.e.*, a tax) and not "for the regulation and benefit of the parties upon whom the assessment [was] imposed" (*i.e.*, a fee). The Court is further unable to determine from the evidence that has been submitted by the City that the charges for these services were intended to "generate revenues that the [City] can use to offset unrelated costs or confer unrelated benefits" (*i.e.*, a tax) and not a charge that does "nothing more than recover [the City's costs] of delivering utility services" (*i.e.*, a fee). The City has failed to meet its burden of proving by a preponderance of the evidence that the charges for the delinquent municipal services, the delinquent storm water services, and the delinquent water services are a "property tax" entitled to priority status under § 507(a)(8)(B).

In an effort to avoid this conclusion, the City makes two legal arguments to show that the charges for the delinquent municipal services, the delinquent storm water services, the delinquent water services, and the "other special" services are a "property tax" (and properly classified as a priority claim) and not just a fee. First, the City argues that the delinquent municipal services, the delinquent storm water services, the delinquent water services, and the "other special" services should be considered a "property tax" because under state law they become a lien on the property when they are not paid.

The City points to various state statutes to support its argument, but the United States Supreme Court has been clear that courts must put "no weight on the 'tax' label in the [state] law" and instead conduct the "functional examination" and determine how the exaction operates. *Reorganized CF & I Fabricators*, 518 U.S. at 220 (noting that "[o]n a number of occasions, this Court considered whether a particular exaction, whether or not called a 'tax' in the statute creating it, was a tax for purposes of [the priority provision of the Bankruptcy Act of 1898], and

8

in every one of those cases the Court looked behind the label placed on the exaction and rested its answer directly on the operation of the provision using the term in question."). In its analysis of the definition of "tax" in determining the extent of exceptions to the automatic stay under § 362(b), the Seventh Circuit observed that "[s]tate law terms are not dispositive in bankruptcy law." *Grede Foundries*, 651 F.3d at 794 (citation omitted).

As noted by the Seventh Circuit, "utility charges in no sense constitute a tax despite the fact that they potentially end up on a property tax bill among genuine taxes." *Id.* at 794. The method of collecting a charge under state law is not what determines whether such a charge is a property tax. Rather, the question is whether a charge is imposed to generate revenues that the municipality can use to yield public revenue (*i.e.*, a tax) as opposed to recovering the municipality's cost of delivering utility services (*i.e.*, a fee). *Id.* at 794-95.

Under this analysis, the City's ability to add the Debtors' arrears for utility services to the Debtors' property tax bill did not turn the charges for the delinquent municipal services, the delinquent water services, the delinquent storm water services, or the "other special" services into a tax. The City was required to come forward with evidence to permit the Court to conduct the "functional examination" of the charges and to determine whether the charges operated as a tax or a fee regardless of the labels imposed by state law or the methods for collecting the past due amounts. The City has not done so.

The cases cited by the City in support of its argument do not change this conclusion. *See In re New England Carpet Co., Inc.*, 26 B.R. 934, 936-37 (Bankr. D. Vt. 1983) (relying on a subsequently overruled decision to summarily conclude that water rents were a property tax and entitled to be treated as a priority claim); *In re Ayala*, 35 B.R. 651, 654 (Bankr. D. Utah 1983) (holding that debt for garbage fees imposed by the municipality was "in the nature of a property tax because under state law it would, if delinquent, become a lien on the real property receiving water and sewer services."). As noted by the Seventh Circuit, the test for whether a charge is a "tax" is whether it is calculated to generate revenues that the municipality can use to yield public revenue. *Grede Foundries*, 651 F.3d at 794. The "remedy or manner of collection cannot alter the inherent character of water and sewer rents" and does not transform them into taxes. *In re Adams*, 40 B.R. 545, 549 (E.D. Pa. 1984). A municipality's ability to add arrears for utility services to a property tax bill does not transform the charges for the utility services into a tax. *Grede Foundries*, 651 F.3d at 794.

Perhaps recognizing that charges are not property taxes simply because they can become a lien on real property, the City pivoted to its next argument that the charges at issue in this case *become* a property tax if they remain in arrears because of how the City handles its accounting. In support of this argument, the City filed the Declaration of Dennis Yaccarino, an employee of the City Department of Administration, which stated in pertinent part as follows:

> 6.  Prior to inclusion on the tax roll, any payments received by Milwaukee Water Works for water, storm water, sewer

9

charges, and other Milwaukee municipal services charges are received by the Milwaukee Water Works and are used to offset costs within Water, Sewer Maintenance, Sewer User and General Funds.

7.   As soon as any debts for water, storm water, sewer charges, and other Milwaukee municipal services charges are placed on the City's tax roll for inclusion in an upcoming tax bill, the respective funds are credited as though they received payment for those debts.

8.   After inclusion on the tax roll, any payments received by the Treasurer's Office for water, storm water, sewer charges, and other Milwaukee municipal services charges that were previously with the Milwaukee Water Works go into the general fund along with property tax payments received by the City and offset general City spending.

. . .

11.  If payment for any and all charges placed on a tax bill including but not limited to property taxes and charges placed on the tax bill is not made within a year of being issued, the City's general fund is credited with receipt of the payment and receivable is moved to the City's delinquent tax fund.

12.  Thereafter, payments received for past due tax bills and funds received from the sale of foreclosed properties are placed in the delinquent tax fund to offset unpaid tax bill receivables previously moved into that fund.

According to the City, "once the charges hit the tax roll and are added onto the tax bill, they are treated in the exact same manner as property taxes from a budgetary standpoint," and therefore they are "property taxes" under § 507(a)(8)(B). Docket No. 136.

The City's argument that the charges for the delinquent municipal services, the delinquent water services, and the delinquent storm water services become a "property tax" if they remain in arrears because of how the City handles its accounting is unavailing. The question before the Court is whether the charges for the delinquent municipal services, the delinquent storm water services, the delinquent water services, and the "other special" services are a "tax" (*i.e.*, a source of revenue charged to all of the residents of the City to accomplish a general public purpose) or a "fee" (*i.e.*, a cost imposed by the City on the Debtors for services

10

provided by the City to the Debtors).  The City conceded in its letter brief that these amounts were intended to recover costs imposed by the City on the Debtors for services provided to the Debtors by the City (*i.e.*, a fee):

> Municipal charges, such as for water or storm sewers, are involuntary, pecuniary burdens placed on all property owners and the property itself *in proportion to usage and needs* . . . . The City must provide these services at the rate it does. The provision of municipal services to residents is costly and *charges are imposed on users of those services to defray the cost to the City*.

Docket No. 132 at 2 (emphasis added).  The City further conceded in the Yaccarino Declaration that when these charges were first imposed, any payments received "for water, storm water, sewer charges, and other Milwaukee municipal services charges are received by the Milwaukee Water Works and are used to *offset costs* within Water, Sewer Maintenance, Sewer User and General Funds."  Yaccarino Decl. ¶ 6.  As best the Court can speculate from the very limited evidence submitted by the City, the purpose of the charges is to defray costs (*i.e.*, a fee), not to generate general revenue (*i.e.*, a tax).  As in *Grede Foundries*, the charges appear to be calculated to recover a cost imposed on the municipality and not imposed to yield public revenue.  It makes no difference that once the charges are added to the tax bill, the City places payments made towards the charges into the general fund and later places them into the delinquent tax fund.  At their inception, the charges are imposed "in proportion to usage and needs" and to "defray the cost to the City."  Docket No. 132 at 2.  They cannot later become a "tax" because of the manner in which the City treats delinquent charges for budgetary purposes.

The City has failed to meet its burden of proving by a preponderance of the evidence that the charges for the delinquent municipal services in the amount of $379.54, for the delinquent storm water services in the amount of $347.55, or for the delinquent water services in the amount of $480.03 are a "property tax" entitled to priority status under § 507(a)(8)(B).  Because the Debtors have not objected to the amount or validity of the portion of the City's amended claim attributed to the delinquent municipal services, the delinquent storm water services, or the delinquent water services, the Court will allow those charges in the total amount of $1,207.12 as a general unsecured claim.

The final component of the City's amended proof of claim is "interest and penalties" in the amount of $321.79.  The City has not provided the Court with any information about the interest or penalties.  The Court is unable to assess from what has been filed by the City whether the interest is being charged for the amount that the parties agree is entitled to priority status (*i.e.*, the 2020 net property tax in the amount of $479.45) or if the interest is being charged on the debt owed for the delinquent municipal services, the delinquent storm water services, the delinquent water services, or the "other special" services which the City has failed to meet its burden of proving are entitled to priority status.  Arguably, the amount of interest attributable to the 2020 net property tax in the amount of $479.45 could be classified as a priority claim.  *See, e.g., In re*

*Larson*, 862 F.2d 112, 119 (7th Cir. 1988) ("pre-petition interest is to be accorded the same priority as the underlying claim."). But without a breakdown of the amount of interest attributable solely to the 2020 net property tax, and with the City bearing the burden of proof, the Court cannot allow this amount as a priority claim.

The Court is also unable to assess from what has been filed by the City how much of the "interest and penalties" is attributable to "interest" and how much is attributable to "penalties." Section 507(a)(8)(G) grants priority status to a "penalty related to a [property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition] and in compensation for actual pecuniary loss." But the City has not provided the Court with any evidence or argument as to the amount of any "penalty" that would qualify to be treated as a priority claim under this statutory subsection, why any such amount deserves to be treated as a priority claim under this statutory subsection, or how any such penalty is "in compensation for actual pecuniary loss." With the City bearing the burden of proof, the Court cannot allow the "interest and penalties" as a priority claim and instead will treat this portion of the City's amended claim as a general unsecured claim.

There might be a case where the City could present evidence proving that the charges for the delinquent municipal services, the delinquent storm water services, the delinquent water services, the "other special" services, and/or interest and penalties shown on the tax bill are a "property tax" and should be classified as a priority claim. In this case, however, the City has failed to meet its burden of proof with the evidence it presented.

Accordingly,

IT IS THEREFORE ORDERED: the Debtors' Objection to Amended Claim No. 1-2 of the Office of the City Treasurer of the City of Milwaukee is sustained.

IT IS FURTHER ORDERED: the City's Objection to Confirmation of the Debtors' Amended Plan is overruled.

IT IS FURTHER ORDERED: $479.45 of the unsecured claim of the Office of the City Treasurer of the City of Milwaukee is allowed as a priority claim under 11 U.S.C. § 507(a)(8)(B).

IT IS FURTHER ORDERED: $28,482.43 of the unsecured claim of the Office of the City Treasurer of the City of Milwaukee is allowed as a general unsecured claim.

#####